# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Maryell Maya, | Case No. 25-CV-8249 |
| Plaintiff, | |
| v. | PLAINTIFF DEMANDS TRIAL BY JURY |
| The City of Chicago, | |
| Defendant. | |

## **COMPLAINT**

Plaintiff Maryell Maya ("Plaintiff"), by her attorneys, Daniel I. Schlade, James M. Dore and Justicia Laboral LLC, complains against The City of Chicago ("Defendant" ), and in support of this Complaint, states:

## **Introduction and Parties**

1.    This is an action for sexual harassment, gender discrimination, retaliation, and constructive discharge, and it is brought under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C. §2000e et seq., 42 U.S.C. § 1981a, and the Civil Rights Act of 1866 as codified by 42 U.S.C. § 1981, and related state law tort claims.

2.    This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C.§1331, in that this is a civil action arising under the laws of the United States, specifically Title VII, 42 U.S.C. 2000e, and 42 U.S.C. 1981; and supplemental jurisdiction over any related state law claim(s) pursuant to 28 U.S.C. § 1367.

3.    Venue is proper under 28 U.S.C. § 1391 in the Northern District of Illinois because Plaintiff resides in this District and the events that gave rise to this claim occurred in this District.

4.     This case involves claims for sexual harassment, gender discrimination, hostile work environment, and constructive discharge.

## Parties

5.     Plaintiff Maryell Maya is an individual residing in Chicago, Illinois and she was, at all times relevant, employed by Defendant the City of Chicago, in the City of Chicago Police Department ("CPD").  Plaintiff is a female of Latina racial and ethnic designation.

6.     Defendant City of Chicago is a municipal corporation under the laws of the City of Chicago, located in the Northern District of Illinois. It is authorized under the laws of the State of Illinois to maintain the Chicago Police Department, which acts as the City's agent and policymaker in the area of municipal law enforcement, and for which the city is ultimately responsible. The City of Chicago is an employer as defined by Title VII of the Civil Rights Act of 1964 and was at all times relevant to this complaint, Plaintiff's employer.

7.     At all times pertinent herein, the Defendant City of Chicago is an organization which has had in excess of 500 employees for each working day in each of twenty or more calendar weeks in the current or preceding year.

## Exhaustion of Administrative Remedies

8.     On March 1, 2022, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 440-2022-03928, alleging sexual harassment, gender discrimination, hostile environment and retaliation against Defendant.

9.     Plaintiff's charge was referred to the Department of Justice by the EEOC after conciliation efforts by the EEOC were unsuccessful.

10.     On June 18, 2025, Plaintiff received a Notice of Right to Sue from the Department of Justice.  *See* Exhibit A, attached hereto.  Plaintiff filed this Complaint within ninety (90) days of

receipt of the aforementioned notices from the Department of Justice. See Right to Sue Letter, attached hereto as Exhibit A.

11.     Accordingly, Plaintiff has fully complied with all prerequisites to jurisdiction to this Court under Title VII.

### Statement of Facts

12.     On or about September 28, 2020, Plaintiff was hired by Defendant the City of Chicago, for a position within the CPD. Her position was that of a crime victim advocate, in which she met with victims, referred victims out to other agencies for assistance, assisted with victim compensation forms and orders of protection, and provided in-person support to victims of crimes

13.     Plaintiff had been a competent and good employee at all times while working for Defendant. Plaintiff was never "written up", reprimanded, or disciplined in connection with her work as an employee of Defendant.

14.     While working with Defendant, Plaintiff has suffered adverse employment actions and a hostile working environment where she was sexually harassed. Plaintiff has been subjected to a hostile work environment as a result of her gender, which began with conduct by two CPD officers: Sergeant Steven Haltek ("Sergeant Haltek") and Officer Robert Hernandez ("Officer Hernandez"). The harassing behavior began with Sergeant Haltek.

15.     It has been widely known and reported that there is a pattern of sexual abuse, harassment, retaliation and hostile work environment within the CPD perpetrated by male superiors against female subordinates. [1]

---

1       https://www.chicagotribune.com/politics/ct-chicago-police-sexual-harassment-settlements-20200109-mz/4bafmflza urpcz2zj 63cjkm 4-story .html.

16.     The work environment at the CPD is, at times, an "old boys' club", and at other times, more akin to a "frat house". Plaintiff endured this hostile and harassing environment for months.

17.     In or around November 2020, Plaintiff was assigned to CPD's District 4, where Sergeant Haltek was Plaintiff's supervisor. On Plaintiff's first day under his supervision, Sergeant Haltek commented that they had assigned him a "Florida girl". As the weeks progressed, Sergeant Haltek began to engage in more and more inappropriate behavior toward her.

18.     Sergeant Haltek would make daily unwanted comments to Plaintiff about her looks, he would tell her she looked pretty, he would make comments about her body, and he would complement her "nice big butt."

19.     Also, during this time, Plaintiff was assigned to the same physical office as Sergeant Haltek, and it was a very small office, so she was required to sit next to him.  Seargent Haltek would take advantage of this situation, and make unwanted sexual comments to Plaintiff, such as she would have to "sit on his lap" in the smaller office.

20.     On other occasions, Sergeant Haltek would often make fake "phone calls to God" and thank God for sending Plaintiff to his District.

21.     In or about December 2020 or early January 2021, there was a Christmas party for Plaintiff and Sergeant Haltek's unit, which Plaintiff did not attend. At work in the following days, Sergeant Haltek "complained" to Plaintiff that "he got dressed up for her, and she didn't even attend the party."

22.     Sergeant Haltek also knew that Plaintiff was from Florida, and he would repeatedly make comments about taking her to Florida and retiring with her. Sergeant Haltek would also often linger around her area and stare at her.

23.     Sergeant Haltek's comments increasingly became more aggressive and graphic towards Plaintiff.  During one incident in late January 2021, there was a stray dog behind the station for which Plaintiff had taken to bringing food to the animal.  During one occurrence when Plaintiff was feeding the dog, Sergeant Haltek remarked to Plaintiff, in front of a number of other CPD officers, that she should "stop pitying the dog, I got something else for you to pet." Sergeant Haltek then pointed to his crouch, while other officers laughed at Plaintiff.  This unwanted comment made Plaintiff very uncomfortable.

24.     After this incident, in or about late January 2021, Plaintiff complained to Sergeant Haltek, and she told him that his behavior had gotten out of hand, and that he needed to stop it. Sergeant Haltek responded by saying "you can't take a joke", and then he called her a "little girl," and said "I've been around here longer than you've been alive."

25.     In early February 2021, Plaintiff repeatedly asked Sergeant Haltek to stop harassing her. When she again asked Sergeant Haltek to stop his behavior, and that if not she would report him, Sergeant Haltek responded that he had trained Director Brooks, to whom she would have to report, and that they were friends since Director Brooks started as a janitor for CPD. Further, Sergeant Haltek told Plaintiff "trust me any report from you would not go anywhere" and that he could control Director Brooks.

26.     The following day after Plaintiff threatened Sergeant Haltek with filing a report for his behavior, he kicked Plaintiff out of her office and took away her desk and sent her to a storage area on the opposite side of District 4. He also began assigning her undesirable and dangerous jobs. For example, he tasked her with going to a known abandoned house to "talk to family members" who were not going to be present. This was done purposefully to harass and scare Plaintiff into not reporting his unwanted sexual harassment.

27.     This sexual harassment conduct, which was continuously made by Sergeant Haltek during Plaintiff's employment at CPD, was so severe and pervasive that Plaintiff's work environment became hostile and stressful.  Every single day, sometimes multiple times per a day, Plaintiff would have to endure Sergeant Haltek's sexually charged and unwanted comments and behavior.

28.     On or about December 2020/January 2021, another officer, Officer Hernandez, began to confide in Plaintiff in an attempt to win her affection. Initially Officer Hernandez told Plaintiff that she should continue to look out for Sergeant Haltek, because Sergeant Haltek wanted to have sex with her; and that Sergeant Haltek had previously had sex with other CPD female personnel.

29.     Around this time, Plaintiff was assigned to work on a case with Officer Hernandez. On one occasion, in or about December 2020, Officer Hernandez told Plaintiff that he "loved her". He started making unwanted phone calls and leaving voice messages since Plaintiff did not respond. He once made 60 phone calls to Plaintiff's cell phone in a span of 3 days between December 15-18, 2020.

30.     Also, in or about December 2020, Plaintiff fell on the staircase, and Officer Hernandez told her he would help her get up. Taking advantage of the situation, Officer Hernandez grabbed Plaintiff's behind, and this unwanted touching made Plaintiff feel very uncomfortable and she told Officer Hernandez not to touch her again.

31.     Plaintiff immediately told Officer Hernandez to stop harassing her, since she was not interested in him. As a response, Officer Hernandez made threats to Plaintiff which made her fear for her life and safety. Specifically, he told her that he had gang connections through his CPD work, including with the dangerous gang Latin Dragons. Officer Hernandez then threatened her family. He also went to her house and stalked her. One time, when Plaintiff was coming out of her building, Officer Hernandez was parked in front of her building in an attempt to intimidate her and

let her know he knew where she lived. He also told Plaintiff that he knew she had 3 children and that she was a single mom. This made Plaintiff extremely anxious and distressed. This all occurred on or around February and March 2021.

32. Shortly thereafter, around March 2021, Sergeant Haltek and Officer Hernandez began a concerted effort to harass Plaintiff. Both spread rumors around their station that they have had sex with Plaintiff.

33. During this time, Plaintiff's harassment was so severe and pervasive that she felt threatened and feared for her life. As a result, she complained to Captain Carlin Morse and Assistant Director Aileen Robinson. Captain Carlin Morse's response to Plaintiff was to scream at her and grab her by the arm and tell her to "stop acting like a little kid" and this is the job that you signed up for.

34. Also, during this period of March 2021, another female officer named Danielle Flores, who worked under Sergeant Haltek and Officer Hernandez, started calling Plaintiff a  "bitch" and "a rat," and she said, "you're going to ruin the unit [with your whistleblowing]."

35. Plaintiff's work environment became intolerable, and on March 23, 2021, she decided to make a formal written complaint about the sexual harassment she was experiencing at the hands of her supervisor Sergeant Haltek and coworker Officer Hernandez. Plaintiff complained to Assistant Director Aileen Robinson and Commander Novalez. Plaintiff made a written and verbal statement to both about the sexual harassment and hostile environment she was enduring at the CPD. Assistant Director Aileen Robinson and Commander Novalez failed to conduct a proper investigation of Plaintiff's complaints, and instead the situation quickly became worse for her. In fact, things got worse as the department turned against Plaintiff.

36. Plaintiff was transferred from District 4 to headquarters on March 24, 2021, as a result of having complained to Assistant Director Aileen Robinson and Captain Carlin Morse about the

sexual harassment and hostile environment. This constituted an adverse employment action. Plaintiff faced additional and repeated workplace retaliation during her stay in headquarters as a result of the transfer, and she was deprived of promotions opportunities to which she was entitled. By way of example, the officials in charge demeaned her and increased her workload; and they would make comments that she was the person who reported the sexual harassment and to "be careful from her". Also, she was not invited to trainings and gatherings, and she would be yelled at by supervisors in front of other CPD personnel. Specifically, Captain Carlin Morse once yelled at her in front of everybody at headquarters. Plaintiff's mental health was very affected by the CPD's continued harassment. Plaintiff started suffering panic attacks and extreme anxiety as a result.

37.    In or around mid-April 2021, Plaintiff was transferred again, this time to District 9. This additional transfer to District 9 constituted another adverse employment action.

38.    As soon as Plaintiff was transferred to District 9, Captain Carlin Morse and Assistant Director Aileen Robinson substantially increased her workload. Not only that, but Assistant Director Aileen Robinson required Plaintiff to email her supervisors every single day to report and justify her tasks for the day. Plaintiff was the only employee who had to do this as workers in similar positions did not have such reporting requirements.

39.    During her time at District 9, the unwelcomed pattern of intimidation and harassment by Assistant Director Aileen Robinson towards Plaintiff worsened. As another example of hostile behavior directed toward Plaintiff, Assistant Director Aileen Robinson demanded that Plaintiff report to headquarters before starting her shift and after finishing her shift every day while working in District 9. That meant that she had to drive an additional 15 minutes to get to headquarters in the morning and then head to District 9. Similarly, after she finished in District 9, she would have

to drive back to headquarters and report to Assistant Director Aileen Robinson. Plaintiff was required to perform this additional work using her personal vehicle, creating an additional and unnecessary expense for her.

40.     Not only that, but Assistant Director Aileen Robinson gave Officer Sabrina King the assignment of "keeping an eye" on Plaintiff during the workday at District 9. This Officer had to make notes on Plaintiff's whereabouts and report them to Assistant Director Aileen Robinson constantly. Officer King was rewarded by Assistant Director Aileen Robinson by giving her lighter assignments for monitoring Plaintiff and informing her.

41.     In addition, Plaintiff was left behind with respect to promotions. Other officers of similar experience and qualifications were promoted ahead of Plaintiff. In furtherance of this scheme, Assistant Director Aileen Robinson failed to send Plaintiff to the mandatory trainings she needed to take to keep her credentials up to date. Finally, both Assistant director Aileen Robinson and Captain Carlin Morse would comment to other agencies to be "careful with Plaintiff" and to not work with her because she had reported sexual harassment in the CPD.

42.     Meanwhile, starting around the time of Plaintiff's formal complaint and transfer, Sergeant Haltek and Officer Hernandez started to spread rumors about Plaintiff through at least October 2021. Both Sergeant Haltek and Officer Hernandez often joked with other CPD personnel that they "fucked Plaintiff and got her pregnant". They also said that Plaintiff had left District 4 because she did not want people to know that she was "pregnant", and that they had to "start a GoFundMe for her baby." Plaintiff found out in October 2021 about this GoFundMe page when her coworker Officer Blanca Moya showed it to her.

43.     As a result of this campaign of harassment, in or about October 2021, Plaintiff's panic attacks worsened. Plaintiff started to suffer additional chronic physical and mental issues that

resulted in her needing medical care and medication. Her physician immediately told her that she needed to take a medical leave of absence.

44.     Plaintiff's Captain Carlin Morse and Assistant Director Aileen Robinson told her that she would lose her job if she did not come into work (which was a violation of the Family Medical Leave Act ("FMLA"); however, Plaintiff followed her physician's directive and took a leave of absence.

45.     By July 2022, Plaintiff could not take it anymore. Her mental and physical situation was unsustainable due to the two adverse employment action transfers, and the heightened hostile work environment she had to endure as a result of the CPD's retaliation for her having complained against its agents Sergeant Haltek and Officer Hernandez. Defendant and its agents intentionally discriminated against Plaintiff: Captain Carlin Morse and Commander Aileen Robinson retaliated against Plaintiff by yelling at her in public, increasing her workload with dangerous assignments, relocating her to a storage closet area, and denying her the ability to work in a professional and safe environment.

46.     After complaining about the sexual discrimination and harassment, the retaliatory treatment towards Plaintiff and the work environment got so hostile at the CPD that Plaintiff could no longer continue working there. As a result of all of this, because of her mental and physical situation, and the pervasive and hostile work environment, Plaintiff resigned from the CPD, however this was not a voluntary resignation, it was a constructive termination.

47.     Defendant maintained a hostile work environment, permitted sexual harassment to occur directed towards Plaintiff; discriminated against Plaintiff because of her sex and gender; failed to take any reasonable action to protect Plaintiff from injury and mistreatment; and permitted ongoing sexual harassment and sexual assaults/batteries to occur.

48.     Defendant unlawfully discriminated against Plaintiff because of her sex and allowed a hostile work environment where she was sexually harassed.

49.     As Plaintiff's employer, Defendant did not do anything to prevent and/or stop the sexual harassment which Plaintiff was subjected to during her employment, despite Plaintiff's repeated complaints to her coworkers.

50.     Further, Defendant permitted ongoing sexual harassment and sexual assaults/batteries to occur and favored male employees.

51.     As a result of Defendant's actions, Plaintiff felt humiliated, degraded, victimized, embarrassed and emotionally distressed, and nothing was ever done.

52.     Defendant intentionally created a working environment that was hostile and abusive to Plaintiff. During the course of Plaintiff's employment at Defendant, she has had to receive, and continues to receive, treatment for the stress and trauma imposed upon her by Defendant and the working environment created by Defendant.

53.     Plaintiff is seeking damages for backpay, front-pay, emotional distress, punitive damages, and related state law statutory claims and torts.

<u>**Count I**</u>
<u>**Title VII, 42 U.S.C. §2000 (e) *et seq.***</u>
<u>**Sexual Discrimination, Harassment and Hostile Work Environment**</u>
<u>**Against Defendant City of Chicago**</u>

54.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 53 as if set forth in full herein for Paragraph 54.

55.     Plaintiff is a female and member of a protected class.

56.     Plaintiff was similarly situated to individuals not of the protected class such as male coworkers.

57.    Throughout her employment, Plaintiff was a satisfactory and conscientious employee who performed her assigned tasks in an acceptable manner consistent with Defendant's and CPD's standards.

58.    Defendant's employees Sergeant Haltek and Officer Hernandez treated Plaintiff differently than other similarly situated male employees without a legitimate governmental purpose of doing so.

59.    Plaintiff was subjected to sexual harassment and sex discrimination by Defendant and its agents Sergeant Haltek (Plaintiff's supervisor) and Officer Hernandez (Plaintiff's coworker).

60.    The harassment to which Plaintiff was subjected by Sergeant Haltek and Officer Hernandez's behavior was extremely offensive, both objectively and subjectively.

61.    The offensive conduct created an objectively hostile and intimidating work environment for Plaintiff.

62.    This offensive conduct interfered with Plaintiffs ability to do her job.

63.    Defendant condoned the sexual harassment of Plaintiff and failed to maintain a discrimination-free work environment, and as a result, Sergeant Haltek and Officer Hernandez continuously and regularly forced unwelcome sexual advances and offensive conduct upon Plaintiff.

64.    Defendant failed to maintain a discrimination-free work environment by failing to employ an effective anti-discrimination policy with respect to their employees and officers.

65.    As a direct result of these failures by Defendant, Sergeant Haltek and Officer Hernandez continued to discriminate against and engage in otherwise offensive conduct toward Plaintiff.

66.    Defendant's treatment of Plaintiff was motivated by evil intent and was recklessly and callously indifferent to Plaintiff's federally protected rights.

67.     Defendant did not engage in the aforesaid conduct against similarly situated male employees.

68.     Defendant discriminated against Plaintiff due to her sex, female.

69.     The sex discrimination that Plaintiff was subjected to at the hands of Defendant, its agents, representatives, and employees was persistent in nature, unwelcome, extremely offensive, humiliating, and effective in creating a hostile work environment for Plaintiff.

70.     As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful embarrassment among her friends, colleagues, and coworkers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

**WHEREFORE**, Plaintiff Maryell Maya, by and through her attorneys respectfully requests that the Court enter an order granting the following relief against Defendant the City of Chicago:

A.  Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act as amended;

B.  Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

C.  Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

D.  Award Plaintiff damages for emotional distress and compensatory damages;

E.  Award Plaintiff punitive damages;

F.  Award Plaintiff reasonable attorney's fees, costs, and disbursements;

G.  Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them from engaging in any unlawful employment practice;

H. Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination; and

I. Award Plaintiff any and all other relief as the Court deems just in the premises.

## Count II
## Discrimination based on gender with respect to the terms or conditions of employment in violation of Title VII of the Civil Rights Act of 1964 , 42 U.S.C. § 2000e et seq.

71.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 70 as if set forth in full herein for Paragraph 71.

72.     Plaintiff is a female and member of a protected class.

73.     Plaintiff was at all times qualified for her job as an employee of the CPD and met the legitimate expectations of her employer.

74.     On March 24, 2021, Plaintiff was transferred from District 4 to headquarters. Around mid-April 2021, Plaintiff was transferred again, this time to District 9. This transfers to headquarters and then to District 9 constituted an adverse employment action.

75.     Plaintiff's transfers both to headquarters and then to District 9 resulted in her having an increased workload with dangerous assignments, relocating her office and workspace to a storage closet area, and denying her the ability to work in a professional and safe environment. This transfer also resulted in a loss of her ability to seek career advancement, since she was denied access to mandatory trainings to maintain her credentials up to date. Plaintiff was also subjected to excessive monitoring and reporting requirements which no other employee had to go through.

76.     All actions taken against Plaintiff by her superiors mentioned above, qualify as adverse employment actions taken in violation of Title VII. The aforementioned adverse employment actions taken against Plaintiff were part of a pattern, practice, and policy of the Defendant.

77. Plaintiff's gender was a motivating factor in Defendant's decision to take the aforementioned adverse employment actions against her with respect to the terms or conditions of Plaintiff's employment.

78. The aforementioned employment actions taken by Defendant against Plaintiff were initiated intentionally, knowingly, maliciously, and in willful and wanton disregard and reckless indifference to Plaintiff's rights all in violation of Title VII.

79. As a result of Defendant's unlawful acts, in violation of Title VII as aforesaid, Plaintiff has lost wages, benefits, and suffered emotional distress.

WHEREFORE, Plaintiff Maryell Moya respectfully requests the Court to enter judgment in her favor, and against Defendant City of Chicago as follows:

A. Declare that Defendant's conduct was in violation of Title VII of the Civil Rights Act as amended;

B. Award Plaintiff the value of the compensation lost and benefits lost as a result of Defendant's unlawful conduct;

C. Award Plaintiff the value of compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

D. Award Plaintiff damages for emotional distress and compensatory damages;

E. Award Plaintiff punitive damages;

F. Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

G. Award Plaintiff any and all other relief as the Court deems just in the premises.

### Count III
### Sexual Harassment and Constructive Discharge
### in violation of Title VII of the Civil Rights Act of 1964 , 42 U.S.C. § 2000e et seq.

80. Plaintiff adopts and incorporates by reference Paragraphs 1 through 79 as if set forth in full herein for Paragraph 80.

81.     Plaintiff was subjected to sexual harassment and sex discrimination by Defendant and its agents which created a hostile work environment because of Plaintiff's sex.

82.     Plaintiff found the harassment to which she was subjected, as a result of Sergeant Haltek and Officer Hernandez's behavior, extremely offensive.

83.     The offensive conduct created an objectively hostile and intimidating work environment for Plaintiff.

84.     As a result of the foregoing actions, in July 2022, Plaintiff was forced to leave her job because her working conditions became so intolerable that any reasonable person in her situation would have been compelled to resign.

85.     Defendant's actions were willful and malicious and constituted a reckless indifference to Plaintiff's rights under Title VII of the Civil Rights Act as amended.

86.     As a result of the acts complained of herein, Plaintiff has suffered and will continue to suffer the effects of unlawful discrimination, extreme emotional distress and mental anguish, loss of career opportunities, loss of a job, damage to Plaintiff's reputation and professional development, and other compensable losses and damage.

WHEREFORE, Plaintiff Maryell Maya, by and through her attorneys respectfully requests that the Court enter an order granting the following relief against Defendant the City of Chicago:

A.     A declaratory judgment that the Defendant has violated Title VII;

B.     Award compensatory damages in an amount to be determined at trial;

C.     Award pre-judgment and post-judgment interest on the above damages;

D.     Award Plaintiff attorney's fees, costs and litigation expenses; and

E.      Award Plaintiff such other and further relief as this Court deems just and proper.

## Count IV
## Retaliation against Defendant City of Chicago

87.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 86 as if set forth in full herein for Paragraph 87.

88.     Count IV is brought pursuant to Title VII against Defendant City of Chicago.

89.     From approximately September 28, 2020, through July 18, 2022, Defendant the City of Chicago, through their employees and agents subjected Plaintiff to debilitating sexually offensive and harassing comments due to her sex.

90.     Plaintiff repeatedly opposed her supervisor Sergeant Haltek and coworker Officer Hernandez's aforesaid harassment and discrimination.

91.     Plaintiff repeatedly complained about Sergeant Haltek and Officer Hernandez's unwelcome and offensive harassment and discrimination.

92.     Shortly after Plaintiff complained to Assistant Director Aileen Robinson and Commander Novalez about the unwelcome sexual harassment and hostile environment she was subjected to, Defendant subjected Plaintiff to unwarranted and invalid discipline and undesirable job assignments. Plaintiff was taken out of her office; her desk was taken away; and she was assigned undesirable and dangerous jobs, such as going to a known abandoned house to "talk to family members" who were not going to be present. This was done purposefully to harass and scare Plaintiff

93.     The issuance of unwarranted and invalid discipline was calculated to frighten and intimidate Plaintiff.

94.     Sergeant Haltek and Officer Hernandez were never disciplined, counseled, or reprimanded for the inappropriate, offensive, and humiliating behavior to which both men subjected Plaintiff.

95.     Defendant's actions as stated herein are adverse employment actions taken against Plaintiff.

96.     The aforesaid conduct by Defendant against Plaintiff amounts to retaliation in violation of the law.

97.     Similarly situated employees of Defendant who did not complain about sexual harassment and sex discrimination were treated more favorably than Plaintiff.

98.     An inference of retaliatory motive is raised due to the fact that Plaintiff's opposition to sexual harassment and sex discrimination and Defendant's retaliatory actions took place in such a short period of time.

99.     The Defendant's treatment of Plaintiff was motivated by evil motive and intent and was recklessly and callously indifferent to Plaintiff's legally protected rights.

100.    The Defendant's retaliation against Plaintiff adversely affected the terms and conditions of Plaintiff's employment with Defendant at the CPD.

101.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered the indignity of discrimination, harassment, retaliation, the invasion of the right to be free from discrimination and harassment, and great humiliation in physical illness and emotional distress on the relationships between Plaintiff and her friends and colleagues.

102.    As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered depression, extreme mental anguish, outrage, severe anxiety, shameful embarrassment among her friends, colleagues, and coworkers, damage to her reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of life.

**WHEREFORE**, Plaintiff, Maryell Maya, by and through her attorneys respectfully requests that the Court enter an order granting the following relief against Defendant the City of Chicago:

A.      Award Plaintiff reinstatement, lost wages, including back pay, front pay and lost fringe benefits, and including, without limitation, any lost benefits with applicable prejudgment and statutory interest;

B.      Award Plaintiff costs of litigation, including reasonable attorneys' fees and expert fees and expenses;

C.      Award Plaintiff a judgment against Defendant for compensatory and punitive damages; and

D.      Grant such other and further relief as this Court deems just and proper.

<u>**COUNT V**</u>
<u>**ILLINOIS GENDER VIOLENCE ACT**</u>

103.     Plaintiff adopts and incorporates by reference Paragraphs 1 through 102 as if set forth in full herein for Paragraph 103.

104.     By the conduct as alleged herein, Defendant violated the Illinois Gender Violence Act, 740 ILCS 82/1, *et. seq.*

105.     The Illinois Gender Violence Act defines "gender-related violence" to be a form of sex discrimination involving (1) one or more acts of violence or physical aggression satisfying the elements of battery under the laws of Illinois that are committed, at least in part, on the basis of a person's sex, whether or not those acts have resulted in criminal charges, prosecution, or conviction, (2) a physical intrusion or physical invasion of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois, whether or not the act or acts resulted in criminal charges, prosecution, or conviction, or (3) a threat of an act described in

item (1) or (2) causing a realistic apprehension that the originator of the threat will commit the act. *See* 740 ILCS § 82/5.

106.    The Illinois Gender Violence Act provides that any person who has been subjected to gender-related violence as defined in in the Act may bring a civil action for damages, injunctive relief, or other appropriate relief against a person or persons perpetrating that gender-related violence. *See* 740 ILCS § 82/10.

107.    Defendant was provided with actual notice that Officer Hernandez was sexually harassing Plaintiff and physically abusing her.  Moreover, the acts of physical violence performed by this individual towards Plaintiff were performed on Defendant's premises and witnessed by several workers.

108.    Defendant had an affirmative duty to protect Plaintiff from foreseeable harm, including sexual assaults by her coworkers.

109.    Given that Defendant was advised that Officer Hernandez was harassing and battering Plaintiff, Defendant possessed an affirmative duty to control protect Plaintiff by terminating Officer Hernandez , separating him from Plaintiff; and/or taking other actions to protect Plaintiff.

110.    As a direct and proximate result of Defendant's actions and omissions, Plaintiff suffered injuries, including but not limited to: physical injuries including bruising, physical pain, extreme anxiety, humiliation, embarrassment, severe emotional distress and anguish, and damage to her career, which injuries she continues to suffer.

**WHEREFORE**, Plaintiff Maryell Moya respectfully requests that this Court enter judgment in her favor and against Defendant on Count V and that it:

A.  Award Plaintiff compensatory damages;

B.  Award Plaintiff emotional distress damages;

C.  Award Plaintiff punitive damages;

D.  Award Plaintiff reasonable attorney's fees, costs, and disbursements;

E.  Award Plaintiff any and all other relief as the Court deems just in the premises.


                     s/ Daniel I. Schlade
                   **Justicia Laboral LLC**
                   Daniel I. Schlade (ARDC No. 6273008)
                   James M. Dore (ARDC# 6296265)
                   *Attorneys for Plaintiff*
                   6232 N. Pulaski Rd., #300
                   Chicago, IL 60646
                   P: 773-350-3775
                   E: dschlade@justicialaboral.com


**PLAINTIFF DEMANDS TRIAL BY JURY**

EXHIBIT A



# U.S. Department of Justice
# Civil Rights Division

---

**VIA EMAIL ONLY**

Maryell Maya

james@dorelawoffices.com

Washington, DC 20530

June 18, 2025

625940-NWG

**NOTICE OF RIGHT TO SUE WITHIN 90 DAYS**

Re: Maryell Maya v. CHICAGO POLICE DEPARTMENT, et al.,
EEOC Charge No. 440-2022-03928

Dear Maryell Maya,

This notice is in reference to the charge(s) of discrimination identified above, which [was/were] referred to the Department of Justice by the Equal Employment Opportunity Commission (EEOC) after conciliation efforts by the EEOC were unsuccessful. The Department of Justice has determined that it will not file a lawsuit based on the charge(s). The decision not to file a lawsuit is not a determination by the Department of Justice of whether your allegations of discrimination have merit.

Therefore, you are hereby notified that you have a right to file a lawsuit commencing a civil action based on the charge(s) under the following statute(s):

- Title VII of the Civil Rights Act of 1964, 42 USC. 42 U.S.C. § 2000e, et seq.

If you decide to file a lawsuit under the statute(s) identified above, **you must file it in the appropriate court within 90 days of receiving this Notice.** If you haven't already, you may want to consult with a private attorney of your own choosing and expense.

If you have questions or wish to inspect the investigative file pertaining to this matter, please address your inquiry to the following EEOC office: Chicago District Office. Contact information for this office can be located at https://www.eeoc.gov/field-office/chicago/location.

Sincerely,

Eric A. Sell
Acting Chief
Employment Litigation Section

By:

/s/ Hilary F. Pinion

Hilary F. Pinion
Acting Principal Deputy Chief
Employment Litigation Section


cc: dschlade@justicialaboral.com,
maria.vuolo-milan@cityofchicago.org,
eva.baran@eeoc.gov